# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | | |
|---|---|---|
| ADAM MOSS, | ) | CASE NO. 4:11-cv-00001-JAJ-TJS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| STEPHEN SPARKS, | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

This case was brought by Adam Moss, an inmate at the Iowa State Penitentiary ("ISP") in Fort Madison, Iowa, under 42 U.S.C. §1983. Moss complains that the institution's physician, Dr. Stephen Sparks, was "deliberately indifferent" to his "chronic back problems." (Complaint, Document No. 1.) Dr. Sparks filed a Motion for Summary Judgment on December 2, 2011. (Document No. 19.)

The case was referred to the undersigned magistrate judge for the purpose of a report and recommendation, and a hearing was held at the ISP on March 20, 2012. (*See* Order Referring Case to Magistrate Judge Thomas J. Shields, Document No. 17.) The following Report and Recommendation on the claims raised by Moss is made to United States District Court Judge John A. Jarvey.

## II. FINDINGS OF FACT

**A. Written Record**

Moss has been an inmate of the ISP since October 4, 2001. In February of 2008, Moss

first reported back pains. He received several epidural shots for the pain at the University of Iowa Hospitals and Clinics ("UIHC"). (*See* Dr. Sparks Aff. ¶ 4, Defendant's App. Ex. C, (Document No. 19-3).) In July 2008, he had surgery at UIHC to decompress disks in his back. (*Id.*) He continued to report pain and in December 2008, he underwent a second procedure, a micro diskectomy. (*Id.* ¶ 5.)

After this surgery, Moss continued to report lower back pain. The ISP medical staff sent him back to UIHC multiple times for steroid injections. (*Id.* ¶ 6.) Moss still complained of back pain after these treatments, and on June 9, 2009, he had his third back surgery at UIHC. (*Id.*) His surgeon, Dr. Sergio Mendoza, fused his two lower vertebrae to his tailbone and cleaned out his spinal canal. (*Id.*)

After his third surgery, Moss still complained of "major nerve irritation down [his] leg, . . . side of [his] foot, and in [his] lower back." (Hr'g Tr. at 12.) Dr. Sparks referred him to the Pain Clinic at UIHC to receive more steroid injections. (Dr. Sparks Aff. ¶ 7.) On September 11, 2009, while at UIHC, the staff that performed Moss's third surgery reexamined him. The report from that examination indicated "there is no radiographic evidence to explain the cause of [Moss's] symptoms," and that "ultimately [they] have no explanation for why [Moss] is having the pain that he is having." (Clinic Notes Report attached to Document No. 24.) UIHC staff notified the ISP that there would be no more operations on Moss's back at that time. (Dr. Sparks Aff. ¶ 8.)

Moss continued to report nerve irritation in his back and right leg. (*See* Medical Rs. attached to Dr. Spark's Aff., at Document No. 19-3 p. 23.) From September 2009 to March 2010, Dr. Sparks met with Moss multiple times about his pain. Dr. Sparks expressed concern about Moss's activity levels a few months after his third surgery. In a treatment note from

September 24, 2009, Dr. Sparks noted that Moss had been "reportedly lighting weights in yard while on post-operative sports restriction." (*Id*. p. 13.)  In a restriction form dated that same day, Dr. Sparks prohibited Moss from lifting more than twenty pounds, bending at the waist, squatting, and climbing. (*Id*. p. 78.)  Moss was also restricted from playing all sports. (*Id*.)  There is no record indicating Dr. Sparks lifted these restrictions.

During an appointment on March 12, 2010, Dr. Sparks observed Moss moving stiffly and slowly into the examination room.  However, after his appointment Dr. Sparks witnessed Moss walking with a "loose easy gait" across the courtyard and up the cellhouse stairs. (*Id*. p. 27.)  Dr. Sparks expressed concern that "[Moss] is playing me with his reports of pain that may not be consistent with his behavior & activity levels." (*Id*.)  Though he had written a tentative referral for Moss to return to the UIHC Orthopedics Department, Dr. Sparks first wanted Moss observed while he exercised to determine if Moss was following his weight-lifting restrictions. (*Id*.)

On March 22, 2010, the guards recorded Moss lifting a 175 pound barbell and repeatedly lifting 35 pound dumbbells with no apparent problems. (*Id*. p. 76.)  The ISP staff issued a disciplinary action against Moss for disobeying Dr. Spark's activity restrictions. (*Id*.)  After the disciplinary action, Dr. Sparks cancelled the referral to UIHC. (*Id*. p. 29.)  Dr. Sparks met with Moss on March 26, 2010, and informed him that the referral had be cancelled because of the inconsistencies between Moss's subjective complaints of pain and the lack of objective evidence. (*Id*. p. 32.)  Dr. Sparks wanted to see "objective signs in [Moss's] behavior that he did have pain before [Dr. Sparks] would intervene again." (*Id*.) Two weeks later, Moss was observed again working-out in violation of his restrictions, this time performing chin-ups repeatedly without difficulty or apparent distress. (*Id*. p. 34.)

Staff continued to observe Moss's behavior. Medical notes indicate there were times Moss walked with a right-leg limp or favored his left hip. (*Id*. p. 37.) In response to these observations, Dr. Sparks adjusted Moss's medication levels. (*Id*.) Moss currently takes Gabapentin, Tramadol and ibuprofen to help manage his pain. (Complaint at p. 2.)

Moss has continued to see Dr. Sparks regularly since March 2010. (*Id*. at p. 2–3.) Moss complains that during this time period, some of his sick call-slips and inmate memos "have been totally ignored, and others resulting in appointments with Defendant where nothing's been accomplished." (*Id*. at p. 3.) Moss stated that Dr. Sparks has continued being "deliberately indifferent" to his medical needs. (*Id*.)

**B. Hearing**

During his hearing, Moss noted an "electrodiagnosis" ("EMG") performed at his March 2009 follow-up appointment found "that there was still something back there aggravating the S-1 nerve." (Hr'g Tr. at 9–10.) Though a CAT scan performed on the same day did not reveal the cause of his pain, Moss stated that Dr. Mendoza told him "the only last thing we could do is an exploratory surgery . . . but we just did these three surgeries. I feel better about having you wait it out on pain mediation and see if it leaves. If it don't [sic] get back with Dr. Sparks down the road, have him schedule an appointment, and work from there." (*Id*. at 11.) According to Moss, he waited a year, then scheduled an appointment with Dr. Sparks to discuss a referral. (*Id*. at 12.) He said Dr. Sparks agreed to refer him, and told Moss he could workout while he waited for his referral to UIHC, but "just to know [his] body's limitations." (*Id*.) Moss stated that he would not do anything to hurt his back because he's "been in more pain that [he's] ever been in my life." (*Id*. at 14.)

Moss further indicated that Dr. Sparks "canceled everything, the medications, the appointment" after reviewing the disciplinary report. (*Id*. at 13.) He stated Dr. Sparks only put Moss back on pain medications after Moss's lawyer wrote Dr. Sparks inquiring the treatment Moss was receiving. (*Id*.) Moss said that Dr. Sparks told him "You're never getting back down to Iowa City. Just live [sic] to deal with it." (*Id*.) According to Moss, Dr. Sparks was "expressing frustrations on all the money being spent on my back and I didn't really need back surgery if I could be out there working out." (*Id*.) He believed he was "sort of set-up" to be caught working out so Dr. Sparks "could use that as an excuse to ... not do anything more for me." (*Id*. at 14.)

At the hearing, Moss originally indicated he had not been back to UIHC since his third surgery (*Id*.) However, later he acknowledged that on March 10, 2011, Dr. Sparks referred him to the UIHC Radiology Department for a back X-ray. (*Id*. at 16.) Moss argues the referral for the X-ray was a "cop-out to the situation" because "[a]n X-ray's not going to show what's wrong." (*Id*. at 17.)

Moss stated that he's "not looking for a payday. I just want to get fixed whatever's wrong." (*Id*.) For relief, Moss asks that the court order the ISP to send him to the UIHC Orthopedics Department for a consultation. He asks "to be seen by the ortho department in Iowa City for possibly a new CAT scan and then whatever their recommendations are followed [sic] . . . if that could just simply be made to happen, [he'd] forgo this case altogether." (*Id*. at 17–18.)

### III. ANALYSIS OF LEGAL ISSUES

**A. Defendant's Motion for Summary Judgment**

Dr. Sparks moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

5

(Document No. 19.) The motion was properly supported by a Statement of Undisputed Material Facts (Document No. 19-1), Memorandum (Document No. 19-2), and an Appendix (Document No. 19-3).

Moss submitted a timely Answer to Defendant's Motion for Summary Judgment. (Document No. 21.) After the hearing, Moss submitted additional notes supporting his claim. (Document No. 28.) Though Moss failed to meet certain Local Rule 56 requirements, this magistrate judge fully considers his challenges to the Motion for Summary Judgment, especially in light of his pro se status.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute; or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). The court reviews the record in light most favorable to the nonmoving party and determines whether there is a genuine issue for trial. *Id*. at 249, 255.

Here, Dr. Sparks contends he is entitled to judgment as a mater of law on the claims asserted by Moss under §1983.

**B. Constitutional Violations**

Title 42, Section 1983 of the United States Code provides a remedy for violations of federal rights, or "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. §1983. "Section 1983 'is not a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979)). Therefore, a plaintiff must first show "the specific constitutional right allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989).[1]

Moss alleges that Dr. Sparks violated his rights under the Eighth Amendment by acting with "deliberate indifference" to the seriousness of Moss's "ongoing chronic spinal problems." (Complaint.) The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. A violation of the Eighth Amendment occurs when a prison official is deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see also Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011); *Phillips v. Jasper Cnty Jail* 437 F.3d 791, 795 (8th Cir. 2006). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison

---

[1] The second part of a Section 1983 action requires the plaintiff to show the person who deprived the plaintiff acted "under the color of state law." 42 U.S.C. §1983. Here, there appears to be no dispute that Dr. Spark was acting under the color of state law.

7

guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

To succeed on his Section 1983 claim, Moss must show: "(1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahila*, 114 F.3d 778, 784 (8th Cir. 1997)); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Nelson v. Schuffman*, 603 F.3d 439, 448 (8th Cir. 2010); *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528–59 (8th Cir. 2009).

The first requirement of an "objectively serious medical need" is responsive to "contemporary standard of decency." *Hudson v. McMilian,* 503 U.S. 1, 8 (1992) (quoting *Estelle*, 429 U.S. at 103). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. To constitute an "objectively serious medical need," the need must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. *Phillips*, 437 F.3d 79 at 795; *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995).

To satisfy the second prong of the test, Moss must prove prison officials had a state of mind that was "deliberately indifferent" to his health or future well being. *Farmer v. Brennan,* 511 U.S. 825, 839–40 (1994); *Helling v. McKinney*, 509 U.S. 25, 32 (1993). As held by the Supreme Court,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the officials knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference.
*Farmer*, 511 U.S. at 837. In this manner, the Court adopted the standard of "subjective recklessness," as used in criminal law, as the test for "deliberate indifference." *Id.* at 839–40. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842 (internal citations omitted).

An inmate may prove deliberate indifference by showing the complete deprivation of medical care; however, total deprivation is not necessary for finding a constitutional violation. *Landford*, 614 F.3d at 460. "Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Id*. (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

Beginning with the first element, Moss's back issues may have been a serious medical issue before his multiple surgeries. However, Moss has not provided sufficient medical evidence to show that his continuing back pain amounts to an objectively serious medical need. *See Phillips*, 437 F.3d at 795. He agues that the EMG showed there is something aggravating his back. However, he has failed to show how these results amount to an objectively serious medical need. Furthermore, the UIHC specialists that reviewed the EMG results and performed the CAT scan found no radiographic evidence to support Moss's complaints of pain. (*See* Document No. 24.) These physicians ultimately decided no further operations would be completed, instead pain-management was an appropriate course of treatment. (*Id*.)

Additionally, Dr. Sparks did not find Moss's subjective complaints enough to necessitate

a referral to UIHC. Dr. Sparks continues to monitor Moss's back problems for signs of deterioration. However, at this time, there is insufficient medical evidence in the record to support Moss's complaint that his condition requires Dr. Sparks to send him for further orthopedic treatment.

In addition, Moss has not shown that a layperson would find his need for medical attention so obvious that it was unnecessary for him to present verifying medical evidence. *Schaub v. VonWald*, 638 F.3d at 914 (citing *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)). Moss's subjective complaints of constant pain are not supported by his actions. Though some days Moss walked with a limp and moved slowly, he was also disciplined for not following Dr. Sparks weight-lifting restrictions. Moss admitted that some days he felt fine enough to moderately exercise.

Moss has also failed to sufficiently show that Dr. Sparks was "deliberately indifferent" to his medical needs. There is nothing in the record that shows Dr. Sparks knew, or should have inferred from the circumstances, about an "excessive risk to [Moss's] health" and disregarded it. *Farmer,* 511 U.S. at 837. Dr. Sparks did not completely deprive Moss of medical care, nor has he provided "grossly incompetent" treatment. *Langford,* 614 F.3d at 460.

Instead, this is a disagreement over Dr. Sparks's treatment decision. Prison officials do not violate the Eighth Amendment, however, "when in the exercise of their professional judgement, they refuse to implement a prisoner's requested course of treatment." *Vaughn v. Gray,* 557 F.3d 904, 909 (8th Cir. 2009) (quoting *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)). The evidence shows that Dr. Sparks responded to Moss's complaints. He continued to see Moss after he cancelled the referral, prescribed medications to help Moss manage his pain, and referred

Moss to UIHC for an additional X-ray on his back. Dr. Sparks utilized his medical judgment and decided that Moss's pain could be managed by a particular course of treatment. He was not "deliberately indifferent" to Moss's medical needs, but used his judgment to determine another referral to the Orthopedics Department was not necessary.

## IV. RECOMMENDATION AND ORDER

For the above statement reasons, it is recommended that Defendant's Motion for Summary Judgment (Document No. 19) be granted.

**IT IS ORDERED** that, pursuant to 28 U.S.C. §636(b)(1), the parties have to and including **May 16, 2012,** in which to file written objections, unless an extension of time for good cause is obtained. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990). Such extensions will be freely granted. Any objections must specify the specific portions of this Report and Recommendation to which objections are made, and set forth the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thompson*, 897 F.2d at 357.

Dated April 16, 2012.

_____
THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE